UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NICOLE A. R.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. C26-5299-BAT<br><br>**ORDER REVERSING AND REMANDING FOR AN AWARD OF BENEFITS** |

Plaintiff seeks review of the denial of her application for Supplemental Security Income. She contends the ALJ erred by misevaluating the medical evidence, her testimony, and the lay witness testimony. Dkt. 14 at 2. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for calculation of an immediate award of benefits.

## BACKGROUND

Plaintiff is currently 40 years old, has a college education, and has no past relevant work. Tr. 1210-11, 1232-33. On July 16, 2021, she applied for benefits, alleging disability as of June 1, 2017.[1] Tr. 1195. Her applications were denied initially and on reconsideration. *Id.* ALJ Allen Erickson conducted a hearing and on February 21, 2023, issued a decision finding Plaintiff not

[1] At her first hearing, Plaintiff amended her alleged onset date to July 16, 2021, concurrent with her protective filing date. Tr. 1195.

disabled. Tr. 17-30. The Appeals Council denied Plaintiff's request for review, and Plaintiff appealed to this Court. Tr. 1-3, 1284-85. On September 11, 2024, this Court reversed the ALJ's decision and remanded for further proceedings pursuant to stipulation of the parties. Tr. 1302-07. The ALJ conducted a second hearing and issued a decision on November 25, 2025, finding Plaintiff disabled as of March 1, 2023, but not disabled before that date. Tr. 1195-1213. Plaintiff appeals the ALJ's decision that she was not disabled between July 16, 2021, and March 1, 2023.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

> **Step one:** Plaintiff had not engaged in substantial gainful activity since July 16, 2021.
>
> **Step two:** Plaintiff had the following severe impairments: bipolar disorder and generalized anxiety disorder.
>
> **Step three:** These impairments did not meet or equal the requirements of a listed impairment.[3]
>
> **Residual Functional Capacity:** Plaintiff can perform a full range of work at all exertional levels with the following non-exertional limitations: could understand, remember, and carry out simple instructions; not in a fast-paced production type environment (e.g., where there is an assembly line or a high hourly quota); could make simple work-related decisions; could interact occasionally with the general public; could have exposure to occasional changes in a routine work setting.
>
> **Step four:** Plaintiff had no past relevant work.
>
> **Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

Tr. 1198, 1200-02, 1210-11.

## DISCUSSION

The Court may reverse the ALJ's decision if it is not supported by substantial evidence or if the ALJ applied the wrong legal standard. *Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir.

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

2012). The Court may not reverse the ALJ's decision is an error is harmless. *Id.* at 1111. The Court may neither reweigh evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir. 2002). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold that of the Commissioner. *Id.*

**A. Medical Evidence**

For claims filed after March 27, 2017, the ALJ must articulate the persuasive value of every medical opinion and explain how he or she considered supportability and consistency. 20 C.F.R. § 416.920c(b). These regulations supplant the former hierarchy governing the weight the ALJ must give medical opinions. *Woods v. Kijakazi,* 32 F.4th 785, 792 (9th Cir. 2022). An ALJ cannot reject an opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *Id.*

**1. Terilee Wingate, Ph.D.**

In July 2021, Dr. Wingate opined Plaintiff was markedly limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; and complete a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 478-79. The ALJ found Dr. Wingate's opinion unpersuasive on supportability and consistency grounds. Tr. 1206. Plaintiff argues Dr. Wingate's clinical observations were consistent with her opinion and the ALJ misunderstood the nature of Plaintiff's symptoms. Dkt. 14 at 4.

**a. Supportability**

The supportability factor considers whether and to what extent the medical opinion includes relevant objective medical evidence and supporting explanations. 20 C.F.R. §

416.920c(c)(1). Supportability means the extent to which a medical source supports their opinion by explaining the relevant objective medical evidence. *Woods*, 32 F.4th at 791-92. The ALJ found Dr. Wingate provided no support within her opinion and the doctor's opinion, particularly that Plaintiff has marked limitations, was not supported by her mental status examination. Tr. 1206.

An ALJ may consider the quality of an explanation when determining how much weight to give a medical opinion, *Ford v. Saul,* 950 F.3d 1141, 1155 (9th Cir. 2020), and need not accept an opinion that is "brief, conclusory, and inadequately supported by clinical findings." *Thomas,* 278 F.3d at 957. But an ALJ may not reject a physician's opinion as unsupported while ignoring or unreasonably interpreting the physician's findings. *See Garrison v. Colvin,* 759 F.3d 995, 1012-13 (9th Cir. 2014). In making his supportability finding, the ALJ failed to acknowledge Dr. Wingate's opinion included a clinical interview, clinical findings regarding Plaintiff's symptoms, and a mental status examination. Tr. 476-80. In particular, Dr. Wingate's clinical interview and clinical findings provide a thorough narrative explanation supporting the limitations the doctor assessed. *Id.* That Dr. Wingate did not write the specific bases for each limitation next to that limitation is not a rational reason to reject the opinion. *Adria H. v. Comm'r of Soc. Sec.,* 2022 WL 73870, at *4 (W.D. Wash. Jan. 7, 2022).

Further addressing supportability, the ALJ noted Dr. Wingate was unaware of the longitudinal picture of Plaintiff's psychological impairments because she reviewed only "social worker notes" and not medical reports from the record. Tr. 1206. The ALJ does not elaborate on what these social worker notes contained, and their contents are not apparent from the record. Thus, the ALJ provided no explanation as to how or why Dr. Wingate's review of these notes

affected the supportability of her opinion. Absent such information, the Court finds the ALJ erred and declines to affirm the ALJ's supportability finding on this basis.

**b. Consistency**

The consistency factor considers the extent to which an opinion is consistent with the rest of the evidence in the claim, medical and non-medical. 20 C.F.R. § 416.920c(c)(2). The ALJ found Dr. Wingate's opinion inconsistent with normal mental status examinations in the record. Tr. 1206. Plaintiff argues the ALJ's overreliance on normal mental status examinations is contrary to the Ninth Circuit's recent decision in *Ortiz v. Bisignano*, 179 F.4th 691 (9th Cir. 2026). Dkt. 14 at 4. The Court agrees.

"[M]ental status exams may be of limited relevance to assessing mental health disorders, where a "snapshot" in time fails to capture the full extent of mental health symptoms." *Hecker v. O'Malley,* 2024 WL 4766737, at *10 (D. Haw. Nov. 13, 2024). This is particularly relevant where, as here, the claimant is diagnosed with bipolar disorder. In *Ortiz,* the Ninth Circuit recognized that "[t]he hallmark of bipolar disorder is that it is episodic . . . Properly understood, this condition is not inconsistent with [the claimant] occasionally presenting with normal behavior and affect." 179 F.4th at 702. Further, the ALJ's conclusion is not supported by the records he cited. For example, the ALJ cited Exhibit 23F, which contains 131 pages of therapy notes that tend to support Dr. Wingate's limitations. *See* Tr. 1206 (citing Tr. 2101-2231). Despite normal mental status exams, Plaintiff regularly spoke to her therapist about her difficulties managing responsibilities such as completing simple household chores and caring for foster kittens, burdens which were shared amongst her, her mother, and her sister. *See, e.g.*, Tr. 2102, 2116, 2118, 2151, 2158-59. On one occasion, Plaintiff reported her life "spiraled out of control" for one week because her mother was sick and unable to provide structure to Plaintiff. Tr. 2122.

The ALJ also found Dr. Wingate's opinion inconsistent with Plaintiff's activities of daily living. This finding is not supported by substantial evidence. First, the ALJ may not penalize Plaintiff for attempting to lead a normal life – Plaintiff need not vegetate in a dark room to be eligible for benefits. *Cooper v. Bowen,* 815 F.2d 557, 561 (9th Cir. 1987). Plaintiff feeds foster kittens and scoops litter boxes, completes some household chores, and spends time crafting and watching TV. Tr. 62-66, 251-54. These minimal activities do not require adhering to a full-time schedule, communicating with coworkers, being punctual, or maintaining appropriate work behavior such that they would conflict with Dr. Wingate's opined limitations. In fact, Plaintiff reported experiencing major stress when a group of foster kittens were required to be bottle fed every three hours, which tends to support Dr. Wingate's opinion that she would be markedly limited in her ability to perform activities within a schedule. Tr. 478-79.

Having failed to articulate a valid supportability or consistency analysis, the Court finds the ALJ erred in rejecting Dr. Wingate's opinion.

**2. David T. Morgan, Ph.D.**

Dr. Morgan completed a DSHS Review of Medical Evidence form in July 2021 and adopted the same limitations as assessed by Dr. Wingate. Tr. 489-90. The ALJ found Dr. Morgan's opinion unpersuasive because the doctor did not interview or examine Plaintiff, failed to provide objective evidence in support of his opinion, and did not review evidence other than Dr. Wingate's opinion. Tr. 1206-07. Under the revised regulations, there is no longer any hierarchy in the treatment of physicians' opinions. As such, Dr. Morgan's status as a non-examining physician is not a valid basis for finding his opinion unpersuasive. *See Woods*, 32 F.4th at 792. As the ALJ rejected Dr. Morgan's opinions for the same erroneous reasons that he

rejected Dr. Wingate's opinions. The Court according finds the ALJ erred in discounting Dr. Morgan's opinions.

The ALJ also noted decisions made by DSHS are considered neither inherently valuable nor persuasive to the Commissioner because DSHS uses different rules. *Id.* Indeed, decisions from other governmental agencies about whether a claimant is disabled are neither valuable nor persuasive under the governing regulations. 20 C.F.R. § 416.920b(c)(1). But medical opinions written by DSHS evaluators are not "decisions by other governmental agencies" under the regulations, and instead are medical opinions that the ALJ must review using the consistency and supportability analysis. *See* 20 C.F.R. §§ 416.904, 416.913, 416.920c. The ALJ thus erred in discounting Dr. Morgan's opinion on this basis.

**3. Rebecca Jo Renn, M.D.**

The ALJ found Dr. Renn's opinion partially persuasive. Tr. 1207-08. The ALJ adopted Dr. Renn's assessment Plaintiff has mild and moderate limitations but rejected the doctor's assessment that Plaintiff has marked limitations as out of proportion to the relatively unremarkable mental status examinations in the record and Plaintiff's ability to engage in activities of daily living. *Id.* Dr. Renn opined Plaintiff was "seriously limited"[4] in her abilities to complete a normal workday and workweek without interruptions from psychologically based symptoms; accept instructions and respond appropriately to criticism from supervisors; and deal with normal work stress. Tr. 1171. The ALJ also noted some of Dr. Renn's statements used terms that did not usefully convey the extent of capacity limitation. Tr. 1208. Plaintiff offers several conclusory arguments in defense of Dr. Renn's opinion which fail to establish harmful

[4] The form used by Dr. Renn defined "seriously limited" as meaning "your patient has noticeable difficulty (e.g., distracted from job activity) from 11 to 15 percent of the workday or work week." Tr. 1171.

error. Plaintiff insists that none of her limited activities "are actually inconsistent with Dr. Renn's opinion," and the opinion is fully consistent with Dr. Renn's findings in her own treatment notes. Dkt. 14 at 5. But Plaintiff fails to argue these points further. "Plaintiff cannot make an assertion and leave the Court to do counsel's work – framing the argument and putting flesh on its bones through a discussion of the applicable law and facts." *June J. v. Comm'r of Soc. Sec.,* 2023 WL 4998846, at *2 (W.D. Wash. Aug. 4, 2023). Therefore, the Court will not disturb the ALJ's findings.

**4. Ramona M. Marshall, MA, CAAR**

The ALJ found Ms. Marshall's statements unpersuasive because she did not provide specific vocationally relevant limitations other than Plaintiff cannot follow simple instructions. Tr. 1208. The ALJ found this limitation inconsistent with the opinion of her treating psychiatrist, normal mental status examinations in the record, and her ability to engage in activities of daily living. *Id.* Plaintiff argues that the ALJ misunderstands Ms. Marshall's opinion, and the opinion described Plaintiff's experience when she had been working. Dkt. 14 at 6. Plaintiff's argument is unavailing, as a description of Plaintiff's experience while working does not specify her functional limits. An ALJ may reasonably conclude that characterizations which fail to specify functional limits are inadequate for determining RFC. *Ford,* 950 F.3d at 1156.

Further, despite arguing the ALJ should have adopted both opinions, Ms. Marshall's opinion Plaintiff cannot follow even simple instructions is inconsistent with Dr. Renn's opinion that Plaintiff can understand, remember, and carry out both very short and simple instructions and detailed instructions. Tr. 1171-72. The limitation Ms. Marshall assessed is also inconsistent with Plaintiff's daily activities, which include knitting, cross stitch, and playing computer games, all of which would require following some kind of instructions. Tr. 57, 251, 254. These were

also valid reasons to reject Ms. Marshall's opinion. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ may reject opinion inconsistent with claimant's daily activities*); Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004) (a medical opinion may be properly rejected where it is contradicted by other medical evidence in the record).

**5. Prior Administrative Medical Findings**

Plaintiff challenges the ALJ's rejection of physical findings by Robert Hander, M.D., and Craig Billinghurst, M.D., arguing "[c]ontrary to the ALJ's analysis, the overall record does indeed support a finding that [Plaintiff] was limited to a reduced range of light exertion." Dkt. 14 at 7. Conclusory arguments made without elaboration, explanation, or citation to supportive evidence are insufficient to establish harmful error and are accordingly rejected. *Indep. Towers of Wash. v. Washington,* 350 F.3d 925, 930 (9th Cir. 2003) ("We require contentions to be accompanied by reasons.").

Plaintiff also challenges the ALJ's treatment of psychological findings by Michael Brown, Psy.D., and Alvin Smith, Ph.D. Dkt. 14 at 7. The ALJ found these opinions partially persuasive. Tr. 1205-06. But to the extent that he rejected their findings, it was because the ALJ found Plaintiff was *more* limited than opined by Drs. Brown and Smith. *Id.* Plaintiff fails to explain how she was harmed by the ALJ's decision to temper these opinions in her favor. *Johnson v. Shalala,* 60 F.3d 1428, 1436 n.9 (9th Cir. 1995) (explaining that there is no harm in the "overinclusion of debilitating factors"); *Hubbard v. Astrue*, 371 F. App'x 785, 787 (9th Cir. 2010) (holding the ALJ did not err when he found a claimant more limited than some doctors opined). Accordingly, the Court finds no error in the ALJ's assessment of the prior administrative medical findings.

In sum, the ALJ erred in rejecting the opinions of Dr. Wingate and Dr. Morgan but did not err with respect to the other medical opinions and prior administrative medical findings.

**B. Plaintiff's Testimony**

The ALJ did not find malingering and was thus required to articulate "clear and convincing reasons" to reject Plaintiff's testimony. *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599 (9th Cir. 1999). The ALJ's reasons "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony." *Brown-Hunter v. Colvin,* 806 F.3d 487, 493 (9th Cir. 2015); *see also Laborin v. Berryhill,* 867 F.3d 1151, 1155 (9th Cir. 2017) (the ALJ must identify which testimony the ALJ found not credible and explain which evidence contradicted that testimony). General findings and conclusory statements without supporting evidence are thus insufficient. *Brown-Hunter,* 806 F.3d at 494.

The ALJ found Plaintiff's statements were inconsistent because prior to March 1, 2023, "the medical records show she was with medication management and therapy." Tr. 1203. Although the ALJ apparently omitted a word from this sentence, the rest of the decision indicates the ALJ intended to explain Plaintiff was improving with medication management and therapy. *See Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (the Court must look to all the pages of the ALJ's decision). The Commissioner came to the same conclusion. *See* Dkt. 15 at 4. Plaintiff argues this is an "improper post hoc rationale," Dkt. 16 at 7, but the Court may reasonably draw inferences from the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). That said, the ALJ's rationale is not supported by substantial evidence. Reports of improvement in mental health must be considered in broader context of the claimant's impairment. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). "It is the nature of

bipolar disorder that symptoms wax and wane over time. With respect to such impairments, improvement that is only temporary will not warrant a finding of medical improvement." *Attmore v. Colvin*, 827 F.3d 872, 878 (9th Cir. 2016) (cleaned up). Plaintiff testified she still experiences manic and depressive episodes approximately every three months which last for up to two weeks. Tr. 1244. The ALJ failed to consider the cyclical nature of Plaintiff's bipolar disorder when finding her testimony inconsistent with improvement.

Further, the ALJ ignores "improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Garrison,* 759 F.3d at 1017. Plaintiff testified her improvement has resulted from no longer having a boss and by spending her days focusing on relaxing activities. Tr. 51-52, 57, 75, 1242. Given Plaintiff stated merely having a boss, i.e., someone with power over her, makes her paranoid, stressed, and scared, her improvement would not be maintained if she returned to work. Tr. 51.

The ALJ also found Plaintiff's allegedly debilitating symptoms and limitations were inconsistent with her activities of daily living. Tr. 1205. A claimant's daily activities may be a clear and convincing reason to discount their testimony if they spend a substantial part of their day engaged in activities involving transferable work skills or if their activities contradict their testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff feeds foster kittens and scoops litter boxes, completes some household chores, and spends time crafting and watching TV. Tr. 62-66, 251-54. These activities do not contradict her testimony, nor do they involve transferable work skills. The Commissioner argues that "the foster care [Plaintiff] did for kittens was very demanding and akin to work activity." Dkt. 15 at 18. However, Plaintiff has explained that she trades off chores with her mother and sister and thus only scoops litter boxes every

fourth day and feeds the cats every other day. Tr. 62, 252. In instances where cat care became more demanding, such as when her family took in a group of kittens that had to be bottle fed every three hours, Plaintiff reported experiencing visual hallucinations due to the extreme stress of this responsibility. Tr. 477. Such a response to increased responsibilities does not demonstrate that Plaintiff can work full time. Plaintiff's other activities, like crafting, knitting, spinning yarn, playing computer games, and watching TV, "are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace." *Orn*, 495 F.3d at 639.

In sum, the ALJ erred by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony.

**C. Lay Witness Testimony**

Plaintiff's mother provided a lay witness statement about the impact of Plaintiff's impairments. Tr. 234-40. The ALJ did not articulate how persuasive he found the lay statement but stated that it reflected similar allegations as made by Plaintiff, which were inconsistent with the overall record for the same reasons Plaintiff's testimony was not consistent. Tr. 1208. As the Court has found the ALJ erred in discounting Plaintiff's testimony, the ALJ has also erred in discounting the testimony of her mother.

**D. RFC & Step Five**

Because the ALJ erred in assessing the medical evidence, Plaintiff's testimony, and the lay witness testimony, the RFC determination fails to account for all limitations, and the ALJ's step five findings are not supported by substantial evidence.

**E. Scope of Remand**

Plaintiff asks the Court to credit the improperly discredited evidence and remand for an award of benefits. Dkt. 14 at 18-19. Under the Ninth Circuit's credit-as-true test, three elements

must be satisfied to remand for an award of benefits. *Garrison,* 759 F.3d at 1020. First, the Court must conclude the ALJ has failed to provide legally sufficient reasons for rejecting evidence. *Id.* Second, the Court must find that the record has been fully developed and further administrative proceedings would serve no useful purpose. *Id.* Third, the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* at 1021. Even where a claimant satisfies all elements, the Court has flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.*

The Court finds all the conditions for an award of benefits are met. As discussed above, the ALJ has failed to provide legally sufficient reasons for rejecting the opinions of Drs. Wingate and Morgan, Plaintiff's testimony, and the lay witness testimony. After two hearings, the record is fully developed, and further administrative proceedings would serve no useful purpose. The Commissioner contends several conflicts and ambiguities remain in the record and thus an award of benefits is not the appropriate remedy. Dkt. 15 at 17-18. But the purported conflicts identified by the Commissioner do not create any inconsistencies in the record which would be resolved with another hearing, nor does the record as a whole create serious doubt as to whether Plaintiff is disabled. A "remand for the purpose of allowing the ALJ to have a mulligan" does not qualify as a remand for a "useful purpose." *Garrison,* 759 F.3d at 1021.

Finally, if the improperly rejected evidence was credited as true, a reasonable ALJ would be required to find Plaintiff disabled on remand. Plaintiff testified having a boss was a major source of stress for her, and her condition had improved only as a result of not working and engaging in low-stress activities. Tr. 51-52, 57, 75, 1242. Dr. Wingate opined Plaintiff was

markedly limited in her ability to complete a normal workweek without interruptions from psychologically based symptoms, maintain appropriate behavior in a work setting, communicate and perform effectively in a work setting, and maintain regular attendance. Tr. 478-79.

The VE testified a person could not sustain full-time employment if they were consistently missing more than a day and a half of work per month, requiring one or more additional breaks per workday, or being off task for more than fifteen percent of the workday. Tr. 1253-54. The VE also stated there were no entry level unskilled jobs that would allow a person to have no contact with supervision. Tr. 1255. Considering this testimony, any reasonable fact finder would be required to find Plaintiff disabled if this evidence is credited as true. The Court finds it inappropriate to allow the Commissioner a third opportunity to consider the medical and testimonial evidence under the circumstances of this case and concludes remand for an award of benefits is the proper remedy.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED,** and this case is **REMANDED** for calculation of an immediate award for benefits.

DATED this 16th day of September, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge